Taylor W. Meek (Texas Bar I.D. No. 24100197)
MAYNARD NEXSEN P.C.
5949 Sherry Lane, Suite 820
Dallas, TX 75225
Telephone: (214) 239-2362
Email: TMeek@maynardnexsen.com

Tres Cleveland (*pro hac vice* application to be filed)
MAYNARD NEXSEN P.C.
1901 Sixth Avenue N, Suite 1700
Telephone: (205) 254-1000
Email: TCleveland@maynardnexsen.com

Evan N. Parrott (*pro hac vice* application to be filed)
MAYNARD NEXSEN P.C.
11 North Water Street, Suite 24290
Mobile, AL 36602
Telephone: (251) 206-7449
Email: EParrott@maynardnexsen.com

*Counsel for Formentera Partners Fund I, LP*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 22-90000-mxm11** |
| | § | |
| **ROCKALL ENERGY HOLDINGS, LLC,** *et al.,* | § | **Chapter 11** |
| | § | |
| **Reorganized Debtors.** | § | **Jointly Administered** |
| | § | |
| _____ | § | |
| | § | |
| **TALCO PETROLEUM LLC and** | § | |
| **WHITE MARLIN OPERATING** | § | |
| **CO., LLC,** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | **Adversary No. 23-09003-mxm** |
| | § | |
| **FORMENTERA PARTNERS** | § | |
| **FUND I, LP and U.S. SPECIALTY** | § | |
| **INSURANCE CO.,** | § | |
| | § | |
| **Defendants** | § | |

### BRIEF IN SUPPORT OF DEFENDANT FORMENTERA
### PARTNERS FUND I, LP'S RULE 12(B)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

Introduction ................................................................................................. 1

Background ............................................................................................... 2

Legal Standard ......................................................................................... 8

Argument ................................................................................................. 10

Conclusion ............................................................................................... 12

Case 23-09003-mxm    Doc 13    Filed 06/14/23    Entered 06/14/23 08:30:48    Desc Main
Document    Page 3 of 16

## TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................. 9-10

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ....... 10

*In re Superior Air Parts, Inc.*, 486 B.R. 728, 737 (Bankr. N.D. Tex. 2012) ............ 9

*McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 653 (N.D. Tex. 2009) ................ 9

*Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) .............................. 9-10

**Statutes**

11 U.S.C. § 363(f)(2) ...................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 8

Fed. R. Bankr. P. 7012 .................................................................................. 8

Talco Petroleum LLC, *et al.* v. Formentera Partners Fund I, LP, *et al.*
Brief in Support of Formentera's Motion to Dismiss – Page iii

Defendant Formentera Partners Fund I, LP; ("Formentera"), by and through undersigned counsel, hereby files this brief (this "Brief") in support of the *Defendant Formentera Partners Fund I, LP's Rule 12(b)(6) Motion to Dismiss* (the "Motion") filed contemporaneously herewith. For the reasons stated herein, the Court should grant the Motion and dismiss the claims of Plaintiffs Talco Petroleum LLC ("Talco") and White Marlin Operating Co., LLC ("WMOC" or, together with Talco, the "Plaintiffs") against Formentera in the *Complaint and Request for Declaratory Judgment and Enforcement of Certain Provisions of Confirmed Plan* (AP Doc. 1)[1] (the "Complaint").

## Introduction

The Plaintiffs filed this AP in an attempt to make Formentera—as the purchaser of substantially all of the Debtors' assets—responsible for the Plaintiffs' putative obligations under certain surety bonds issued by Defendant U.S. Specialty Insurance Company ("USSIC"). The Plaintiffs' manufactured attempt to drag Formentera into the dispute between the Plaintiffs and USSIC solely relies on the misreading of a single sentence in the Court's Sale Order (each as defined herein). Crucially, the Plaintiffs' Complaint contains zero factual allegations that Formentera agreed to indemnify USSIC or pay premiums to USSIC in connection with the surety bonds in question (defined herein as the "Five Disputed Bonds"). Instead, the Plaintiffs' claims against Formentera rest solely on conclusory allegations and legal conclusions that the Sale Order somehow obligates Formentera to be responsible for the Five Disputed Bonds. As explained herein, these conclusory allegations and legal conclusions are contradicted by the plain language

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "AP") are cited as "(AP Doc. ____)"; and (2) citations to docket entries in the above-styled main bankruptcy case are cited as "(Bankr. Doc. ____)".

of the PSA (as defined herein) and Sale Order. In short, even if all of the factual allegations in the Complaint were true, the Plaintiffs would not be entitled to relief against Formentera, and the Court should dismiss the Plaintiffs' claims against Formentera.

## Background

1. According to the Complaint,[2] Talco acquired Debtor Rockall Energy, LLC's ownership interests in WMOC and White Marlin Petroleum, LLC ("WMP") in November 2019. (AP Doc. 1 at ¶ 8).

2. On March 9, 2022 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court").

3. On March 10, 2022, the Debtors filed the *Emergency Motion for Entry of Orders (A)(I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling Hearings and Objection Deadlines With Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief; and (B)(I) Approving the Sale of the Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (Bankr. Doc. 16) (the "Sale Motion"), seeking, among other things, entry of an order authorizing the sale of all or substantially all of the Debtors' assets to a successful bidder free and clear of all liens, claims, interests, and encumbrances.

---

[2] For purposes of the Motion and this Brief, the Plaintiffs' factual allegations in the Complaint are accepted as true.

4. On April 29, 2022, USSIC filed the *U.S. Specialty Insurance Company's Objection and Reservation of Rights to Notice to Contract Counterparties and Third-Party Holders of Consent Rights and Preferential Purchase Rights of (I) Potential Assumption and Assignment of Contracts and Leases, and (II) Cure Amounts and Adequate Assurance in Connection Therewith* (Bankr. Doc. 352) (the "Cure Objection") objecting to the *Notice to Contract Counterparties and Third-Party Holders of Consent Rights and Preferential Purchase Rights of (I) Potential Assumption and Assignment of Contracts and Leases, and (II) Cure Amounts and Adequate Assurance in Connection Therewith* (Bankr. Doc. 142). In the Cure Objection, USSIC identified 29 bonds it had previously issued on behalf of the Debtors (the "Surety Bonds"). (*See* Bankr. Doc. 352, Ex. A).

5. On May 20, 2022, the Debtors filed the *Notice of (I) Successful Bidder with Respect to the Sale of Substantially All of the Debtors' Assets; (II) Cancellation of Auction; and (III) Adjournment and Rescheduling of (A) Sale Hearing and (B) Combined Hearing* (Bankr. Doc. 513) (the "Notice of Successful Bidder") providing notice that, among other things, the Debtors selected Formentera as the successful bidder for substantially all of the Debtors' assets with a total cash purchase price of $85,000,000 and attaching the *Purchase and Sale Agreement by and among Rockall ND, LLC, Rockall Midstream, LLC, Rockall Agent Corp., Rockall MS, LLC, Rockall Laurel, LLC, Rockall EOR, LLC, Rockall LA, LLC, Rockall Pine Prairie, LLC, White Marlin Midstream, LLC, Petro Harvester Operating Co., LLC, and Rockall Energy LLC, Individually each a Seller and collectively, as Sellers, and Formentera Partners Fund I, LP, as Purchaser* (the "PSA") as Exhibit A. True and correct copies of the Notice of Successful Bidder and PSA are collectively attached to the Appendix at pp. 1-866.

6. Pursuant to the PSA, Formentera agreed to purchase certain of the Debtors' interests in oil and gas properties, rights, and related assets as more specifically described in the PSA (the "Purchased Assets").

7. Section 7.12 of the PSA provides, in relevant part:

> The Parties agree and acknowledge that **except as expressly provided in this Section 7.12, none of the Credit Support[3] provided by or on behalf of any member of the Seller Group[4] in support of the obligations of any member of the Seller Group related to the ownership or operation of the Assets shall be included in or constitute any Assets or be transferred to the Purchaser at Closing**. At or prior to the expiration of the Closing Date, Purchaser shall either (i) post and provide all Credit Support necessary to consummate the transactions contemplated by this Agreement and to replace **the Credit Support set forth in Schedule 4.13** issued or posted by the Seller Group to any Governmental Authority **as may be required to own and operate the Assets following Closing** or (ii) execute an indemnity agreement with the surety that has posted such Credit Support to permit the Credit Support to remain in place until Purchaser's replacement Credit Support is obtained, at no cost or liability to the Seller Group.

(Appx. p. 81) (emphasis added)). Schedule 4.13 of the PSA identifies, among other things, the 29 Surety Bonds. (*Id.* at pp. 726-732).

8. In other words, Section 7.12 of the PSA provides that Formentera shall either (a) replace the 29 Surety Bonds as may be required to own and operate the assets following closing or (b) execute an indemnity agreement with USSIC to permit such bonds to remain in place until Formentera's replacement bonds are obtained. Thus, pursuant to the PSA, **Formentera was only required to replace the Surety Bonds or execute an indemnity agreement with USSIC in connection with the Surety Bonds if the Surety Bonds were "required to own and operate the assets following closing."** As explicitly stated in the PSA, no other obligations related to the

---

[3] "Credit Support" is defined in the PSA as "any cash deposits, guarantees, letters of credit, treasury securities, surety bonds and other forms of credit assurances or credit support." (Appx. p. 21).

[4] "Seller Group," as defined in the PSA, includes several of the Debtors. (*Id.* at pp. 14, 96, & 837).

Surety Bonds transferred to Formentera. Contrary to Plaintiffs' unfounded assumptions and misreading of the PSA, nothing in the PSA obligates Formentera to replace or execute an indemnity agreement with respect to all 29 Surety Bonds.

9. On May 24, 2022, in accordance with the terms of the PSA, Formentera executed that certain *Payment and Indemnity Agreement No. 1490* (the "Formentera Indemnity Agreement"), a true and correct copy of which is attached to the Appendix at pp. 867-71, in which **Formentera agreed to indemnify USSIC and pay the premiums for seventeen (17) of the 29 Surety Bonds**. (Appx., p. 867). Notably, the Formentera Indemnity Agreement does not identify the Five Disputed Bonds or otherwise obligate Formentera to indemnify USSIC or pay the premiums associated with the Five Disputed Bonds.

10. On June 2, 2022, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving (A) the Disclosure Statement and (B) the Disclosure Statement Supplement; (II) Confirming the Debtors' Amended Joint Chapter 11 Plan; and (III) Authorizing the Sale of the Debtors' Assets* (Bankr. Doc. 600) (the "Confirmation Order") confirming the *Debtors' Amended Joint Chapter 11 Plan* (Bankr. Doc. 548) (the "Plan") and granting the Sale Motion. Specifically, the *Sale Approval Supplement to Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving (A) the Disclosure Statement, and (B) the Disclosure Statement Supplement, and (II) Confirming the Debtors' Amended Joint Chapter 11 Plan* (the "Sale Approval Order" or, together with the Confirmation Order, the "Sale Order")[5] is attached to the Confirmation Order as Exhibit B.

---

[5] The Sale Approval Order provides, "For the avoidance of doubt, this Sale Approval Order, together with the Confirmation Order, constitutes the Sale Order approving the [s]ale [to Formentera]." (Bankr. Doc. 600, p. 158).

11. The Sale Approval Order provides, among other things, (a) for the approval of the sale to Formentera and the PSA; (b) that Formentera has given valid, valuable, and sufficient consideration for the absolution from any potential claims of successor liability to the greatest extent allowed by applicable law, and, accordingly, Formentera shall have no obligations with respect to any liabilities of the Debtors (other than the permitted encumbrances and assumed obligations); (c) that the sale shall vest Formentera with all right, title, and interest of the Debtors to the Purchased Assets free and clear of any and all claims, liens, damages, obligations, liabilities, losses, costs, and expenses (other than certain permitted encumbrances and assumed obligations) with any and all such liens, claims, and/or interests to attach to the proceeds of the sale; (d) that except as otherwise specifically provided in the Sale Approval Order and in the PSA, Formentera and its affiliates shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and Formentera and its affiliates shall have no successor or vicarious liabilities of any kind or character; and (e) that any and all holders of liens, claims, and/or interests in the Purchased Assets who did not object to the sale or who withdrew such objection are deemed to have consented to the sale under § 363(f)(2) of the Bankruptcy Code and are adequately protected by having their liens, claims, and/or interests attach to the proceeds of the sale. (*See* Appx. pp. 1040-41 & 1044-47 (Sale Approval Order at ¶¶ S, T, U, 4, 7, 8 & 11)).

12. Regarding Section 7.12 of the PSA, Paragraph 43 of the Sale Approval Order provides, among other things:

> The Debtors, USSIC, and [Formentera] acknowledge that **certain of the Surety Bonds** are identified on Schedule 4.13 of the PSA (the "Identified Surety Bonds") and will be treated in accordance with Section 7.12 of the PSA. In accordance with the terms of the PSA, Formentera has agreed to execute new Payment and Indemnity Agreements with USSIC in a form satisfactory to USSIC (the "New Indemnity Agreements") with regard to the Identified Surety Bonds, to remain in place until replacement Credit Support has been obtained by [Formentera] and such Surety Bonds have been released.

(*Id.*, p. 1064 (emphasis added)). In other words, consistent with the terms of the PSA, the Sale Approval Order provides that "certain of the Surety Bonds" will be treated in accordance with Section 7.12 of the PSA (*i.e.*, Formetera will agree to execute New Indemnity Agreements concerning *certain* of the Surety Bonds identified on Schedule 4.13 of the PSA, defined as the "Identified Surety Bonds").

13.  Moreover, the Sale Approval Order expressly provides that (a) nothing in the Confirmation Order or Sale Approval Order shall affect or modify the respective rights and obligations of USSIC and Formentera under the New Indemnity Agreements; (b) nothing in the Plan, Confirmation Order, Sale Approval Order, or any other document or other agreement shall be interpreted to enlarge the rights of USSIC or any obligee under the Surety Bonds; and (c) nothing in the Plan or Sale shall affect, impair, alter, limit, release, or modify any rights of USSIC against Talco, WMOC, or WMP in any way. (*Id.*, pp. 1064-66).

14.  On June 10, 2022, the Plan became effective by its terms. (*See* Bankr. Doc. 641).

15.  On December 9, 2022, USSIC filed suit against WMOC in the United States District Court for the Southern District of Texas seeking payment of past due premiums and other costs associated with five of the 29 Surety Bonds, Bond Nos. B011583, B012262, B012263, B012265, and B012260 (the "Five Disputed Bonds"). Specifically, USSIC is seeking $697,350.86 in outstanding premiums, $292,374.98 in reimbursement for a loss incurred in paying a claim made against one of the Five Disputed Bonds, and collateral security of $24,463,213 for the Five Disputed Bonds.

16.  On May 5, 2023, the Plaintiffs filed the Complaint seeking a declaratory judgment under 28 U.S.C. § 2201(a) that Formentera has sole responsibility for the Five Disputed Bonds and that Talco, WMOC, and WMP do not have responsibility for the premiums, collateralization,

and cost reimbursement for the Five Disputed Bonds. Specifically, the Plaintiffs argue that Formentera is responsible for the Five Disputed Bonds because the bonds were identified on Schedule 4.13 of the PSA and the Sale Order provides that Formentera agreed to execute New Indemnity Agreements with USSIC in a form satisfactory to USSIC with regard to certain of the Surety Bonds identified on Schedule 4.13 of the PSA.

17. As explained herein, the Plaintiffs' argument is based entirely on a misreading of the PSA and Sale Order. While the Plaintiffs are correct that the Sale Order provides that Formentera agreed to execute New Indemnity Agreements with USSIC with regard to the Identified Surety Bonds, the Plaintiffs ignore the fact that "Identified Surety Bonds" is a defined term under the Sale Order meaning "**certain** of the Surety Bonds," **not all** of the Surety Bonds. Moreover, Plaintiffs' position also ignores the plain language of the PSA providing that Formentera was only required to replace the Surety Bonds or execute an indemnity agreement with USSIC in connection with the Surety Bonds if the Surety Bonds were **"required to own and operate the assets following closing."** For these reasons, despite the Plaintiffs' conclusory allegations and legal conclusions, the Plaintiffs' Complaint fails to state a claim against Formentera upon which relief can be granted, and the Plaintiffs' claims against Formentera should be dismissed.

## Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), made applicable to the above-styled adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, demands dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Dismissal is warranted if, accepting all the allegations of the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotations and alterations omitted).

Further, while a court must accept well-pleaded facts as true, it "is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *Lycoming Engines v. Superior Air Parts, Inc. (In re Superior Air Parts, Inc.)*, 486 B.R. 728, 737 (Bankr. N.D. Tex. 2012), *aff'd sub nom. Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. May 15, 2014) (quoting *Twombly*, 550 U.S. at 570). Thus, a motion to dismiss for failure to state a claim is reviewed under a two-pronged test. *Id.* "First, the reviewing court may identify those statements in a complaint that are actually conclusions, even if presented as factual allegations." *Id.* (citations omitted). Such conclusions are not entitled to the presumption of truth. *Id.* Second, after striking conclusory allegations, "the reviewing court presumes the truth of any remaining 'well-pled factual allegations,' and determines whether these factual allegations and their reasonable inferences plausibly support a claim for relief." *Id.* at 737 (citation omitted). If they do not, the complaint must be dismissed. *See McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 653 (N.D. Tex. 2009).

When deciding a motion to dismiss, the Court "may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits

attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013). Documents "that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499.[6]

## Argument

Plaintiffs' claims against Formentera should be dismissed under Rule 12(b)(6) because even if all of the factual allegations in the Complaint were true, the Plaintiffs would not be entitled to relief against Formentera. *See Twombly*, 550 U.S. at 558. Simply put, the Plaintiffs' Complaint is devoid of any factual allegations that Formentera agreed to indemnify USSIC or pay premiums to USSIC in connection with the Five Disputed Bonds.

Instead, the Plaintiffs' claims against Formentera rest solely on conclusory allegations and legal conclusions that the Sale Order somehow obligates Formentera to indemnify USSIC and pay premiums in connection with the Five Disputed Bonds. As indicated above, these conclusory allegations and legal conclusions are contradicted by the plain language of the PSA and Sale Order.

The Plaintiffs' contention that Formentera is responsible for the indemnification and payment obligations regarding the Five Disputed Bonds appears to be based on the following

---

[6] Accordingly, the Court may properly consider the PSA, the Sale Order, and the Formentera Indemnity Agreement in deciding the Motion under Rule 12(b)(6). The Court may take judicial notice of its own Sale Order and the PSA that it approved in the main bankruptcy case. The Court may consider the Formentera Indemnity Agreement because the Complaint refers to the "new Payment and Indemnity Agreements" that Formentera agreed to execute with USSIC, and the Plaintiffs' claims hinge on the contention that Formentera agreed to indemnify USSIC and pay the premiums associated with the Five Disputed Bonds. (*See* AP Doc. 1, ¶ 20).

**single sentence** in the Sale Approval Order: "Formentera has agreed to execute new Payment and Indemnity Agreements with USSIC in a form satisfactory to USSIC (the "New Indemnity Agreements") with regard to the Identified Surety Bonds, to remain in place until replacement Credit Support has been obtained by [Formentera] and such Surety Bonds have been released." (Appx. p. 1064). According to the Plaintiffs, this sentence obligates Formentera to indemnify USSIC and pay premiums in connection with the Five Disputed Bonds. However, the Plaintiffs ignore the fact that "Identified Surety Bonds" is a defined term under the Sale Order meaning "*certain* of the Surety Bonds." (*Id.*). If this provision of the Sale Approval Order was intended to provide that Formentera would enter into New Indemnity Agreements for *all* of the Surety Bonds, then the Sale Order would have simply stated as such. Instead, the provision creates a defined term—"Identified Surety Bonds"—and expressly provides that Formentera would enter into New Indemnity Agreements for *certain* of the Surety Bonds.

The Plaintiffs' position also ignores the plain language of the PSA, which provides that Formentera was only required to replace the Surety Bonds or execute an indemnity agreement with USSIC in connection with the Surety Bonds if the Surety Bonds were "required to own and operate the assets following closing." (Appx. p. 81). Like the Sale Approval Order, the PSA does not include any language obligating Formentera to execute an indemnity agreement concerning all 29 Surety Bonds. Instead, as shown by the Formentera Indemnity Agreement, Formentera agreed to indemnify USSIC and pay the premiums for seventeen (17) of the 29 Surety Bonds. (*See* Appx., p. 867). Critically, the Five Disputed Bonds are not among the seventeen (17) Surety Bonds covered by the Formentera Indemnity Agreement. (*Id.*).

Finally, the Plaintiffs' arguments ignore the express provisions of the Sale Order providing (a) nothing in the Confirmation Order or Sale Approval Order shall affect or modify the respective

rights and obligations of USSIC and Formentera under the New Indemnity Agreements; (b) nothing in the Plan, Confirmation Order, Sale Approval Order, or any other any document or other agreement shall be interpreted to enlarge the rights of USSIC or any obligee under the Surety Bonds; and (c) nothing in the Plan or Sale shall affect, impair, alter, limit, release, or modify any rights of USSIC against Talco, WMOC, or WMP in any way. (Appx. pp. 1064-66). Accordingly, the language of the Sale Approval Order cannot enlarge Formentera's express obligations under the Formentera Indemnity Agreement.

For these reasons, Plaintiffs' conclusory allegations and legal conclusions, which are contradicted by the plain language of all of the relevant documents, are not enough to entitle Plaintiffs to relief against Formentera. Consequently, the Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and the Plaintiffs' claims against Formentera should be dismissed.

## Conclusion

For the reasons stated herein, Formentera requests the Court to grant the Motion dismissing the Plaintiffs' claims against Formentera with prejudice and grant Formentera such other and further relief as the Court deems just and proper.

Respectfully submitted this the 14th day of June, 2023.

/s/ Taylor W. Meek
Tres Cleveland (*pro hac vice* application to be filed)
Evan N. Parrott (*pro hac vice* application to be filed)
Taylor W. Meek (Texas Bar I.D. No. 24100197)

*Counsel for Formentera Partners Fund I, LP*

**OF COUNSEL:**

**MAYNARD NEXSEN P.C.**
Taylor W. Meek
5949 Sherry Lane, Suite 820
Dallas, TX 75225

Telephone: (214) 239-2362
Email: TMeek@maynardnexsen.com

*and*

Tres Cleveland
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203
Telephone: (205) 254-1000
Email: TCleveland@maynardnexsen.com

*and*

Evan N. Parrott
11 North Water Street
RSA Battle House Tower
Suite 24290
Mobile, AL 36602
Telephone: (251) 206-7449
Email: EParrott@maynardnexsen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June, 2023, a true and correct copy of the above Notice has been served electronically on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in the above-styled adversary proceeding.

*/s/ Taylor Meek*
OF COUNSEL