Philip G. Eisenberg
Texas Bar No. 24033923
Elizabeth M. Guffy
Texas Bar No. 08592525
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, Texas 77002
Ph: 713-226-1200
Email: peisenberg@lockelord.com
Email: eguffy@lockelord.com

Brad C. Knapp
Texas Bar No. 24060101
LOCKE LORD LLP
601 Poydras Street
New Orleans, LA 70130
Ph: 504-558-5100
Email: bknapp@lockelord.com

W. Scott Hastings
Texas Bar No. 24002241
LOCKE LORD LLP
2200 Ross Avenue Suite 2800
Dallas, TX 75201
Ph: 214-740-8000
Email: shastings@lockelord.com

*Counsel for U.S. Specialty Insurance Co.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 22-90000-mxcm11 |
| | § | |
| ROCKALL ENERGY HOLDINGS, LLC et al. | § | Chapter 11 |
| | § | |
| Reorganized Debtors. | § | Jointly Administered |
| | § | |
| —————————————— | § | |
| | § | |
| TALCO PETROLEUM LLC and | § | |
| WHITE MARLIN OPERATING CO., LLC, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 23-09003-mxm |
| | § | |
| FORMENTERA PARTNERS FUND I, LP and | § | |
| U.S. SPECIALTY INSURANCE CO., | § | |
| | § | |
| Defendants | § | |

**APPENDIX IN SUPPORT OF U.S. SPECIALTY INSURANCE COMPANY'S MOTION
(I) TO DISMISS UNSER RULE 12(B)(1); (II) ALTERNATIVELY, FOR ABSTENTION;
AND (III) TO DISMISS UNDER RULE 12(B)(6)**

| Ex. | Description | Appx. Pp. |
|---|---|---|
| | *Plaintiffs Original Complaint for Indemnity, Equitable, and Other Relief*, Case No. 22-cv-04262; In the United States District Court for the Southern District of Texas, Houston Division | 1-42 |

Dated: July 17, 2023

/s/ Philip G. Eisenberg
Philip G. Eisenberg
Texas Bar No.: 24033923
peisenberg@lockelord.com
Elizabeth M. Guffy
Texas Bar No. 08592525
Email: eguffy@lockelord.com
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, TX 77002
Phone: (713) 226-1304
Fax: (713) 223-3717

Brad C. Knapp
Texas Bar No.: 24060101
Email: bknapp@lockelord.com
LOCKE LORD LLP
601 Poydras Street
New Orleans, LA 70130
Ph: 504-558-5100

W. Scott Hastings
Texas Bar No. 24002241
Email: shastings@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue Suite 2800
Dallas, TX 75201
Ph: 214-740-8000

COUNSEL FOR U.S. SPECIALTY INSURANCE CO.

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of July 2023, a true and correct copy of the foregoing instrument has been served electronically on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in the above-styled proceeding.

/s/ Philip G. Eisenberg
Philip G. Eisenberg

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. |
| WHITE MARLIN OPERATING COMPANY, LLC, | § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR
## INDEMNITY, EQUITABLE, AND OTHER RELIEF

Plaintiff U.S. Specialty Insurance Company (the "**Surety**" or "**USSIC**") files its Original Complaint for Indemnity, Equitable, and Other Relief against White Marlin Operating Company, LLC ("**Indemnitor**" or "**White Marlin**") and shows:

### I.     PARTIES

1.     Plaintiff U.S. Specialty Insurance Company is a Texas corporation.

2.     Defendant White Marlin Operating Company, LLC is a Delaware limited liability company with its principal place of business in Houston, Texas. Talco Petroleum, LLC is the sole member of White Marlin. Nigel Solida is the sole member of Talco Petroleum, LLC and is a Kansas resident. White Marlin may be served with process by serving its registered agent C T Corporation System, 1999 Bryan St., Ste. 900, Dallas Texas 75201-3136.

### II.     VENUE

3.     This Court possesses original jurisdiction over USSIC's claims under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

4.      This Court possesses the power to declare the respective rights and other legal relations of the parties as requested herein under 28 U.S.C. § 2201(a).

5.      This Court possesses the power to grant the injunctive relief requested herein under Rule 65 of the Federal Rules of Civil Procedure.

6.      Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, under 28 U.S.C. § 124(b)(2) and 28 U.S.C. § 1391(b)(1) because one or more of the Defendants reside in the Southern District of Texas, Houston Division, and all of the Defendants are residents/citizens of the State of Texas. Moreover, under a general agreement of indemnity, the Defendant irrevocably and unconditionally submitted to the exclusive jurisdiction of this Court, and the Defendant has waived any and all rights to object to such venue or jurisdiction.

## III.    FACTUAL BACKGROUND

### A.    THE AGREEMENT OF INDEMNITY

7.      On or about July 21, 2015, White Marlin executed Payment and Indemnity Agreement No. 1083 ("**Indemnity Agreement**").[1]

8.      Pursuant to the Indemnity Agreement,

> The [Indemnitor] shall pay the Surety premiums and charges at the rates and at the times specified by the Surety with respect to each Bond . . . continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds, and all matters arising therefrom, and until the Surety receives evidence, satisfactory to the Surety, of such discharge or release.[2]

9.      Indemnitor also agreed:

---

[1] Payment and Indemnity Agreement No. 1083, attached as **Exhibit A**.

[2] Exhibit A at ¶ 1.

---

The [Indemnitor] shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur by reason or in consequence of having executed or procured the execution of the Bonds or in enforcing this Agreement against any [Indemnitor] or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds.[3]

10.    Indemnitor further agreed to post collateral upon demand:

The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the [Indemnitor] to provide collateral, in a form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the [Indemnitor's] obligations to the Surety hereunder ... to cover any actual or potential liability, claim, suit, or judgment under any Bond. Immediately upon the Surety's demand therefor, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral.[4]

11.    With respect to financial information, the Indemnitor agreed to furnish access to their books and records as follows:

Until the Surety shall have been furnished with evidence of its full, final, and complete discharge without loss from any and all Bonds, the Surety and its agents shall have free access, at any and all reasonable times to the books and records of each [Indemnitor] relevant to the obligations under this Agreement.[5]

12.    Moreover, the Indemnity Agreement expressly applied to all outstanding and future Bonds:

This Agreement shall also extend to and cover and indemnify the Surety against loss under any presently outstanding Bonds, and the obligation of the [Indemnitor] hereunder, with respect to such pre-

---

[3] Exhibit A at ¶ 2.

[4] Exhibit A at ¶ 3.

[5] Exhibit A at ¶ 4.

existing Bonds, shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of any or all of the [Indemnitors] under any presently existing agreement relating to or securing such pre-existing Bonds. Further, with respect to any future Bonds, the obligation of any or all of the Principals under any such presently existing agreement(s) shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of the [Indemnitor] hereunder.[6]

## B.   BONDS ISSUED BY USSIC

13.     In reliance upon its rights under the Indemnity Agreement, USSIC, as surety, issued numerous bonds for which White Marlin is obligated to USSIC. The bonds are reclamation bonds required to ensure that necessary environmental remediation takes place after oil and gas exploration and drilling activity. The Surety's obligations under the bonds include reclamation, payment of taxes, and compliance with environmental laws and regulations.

14.     The Indemnity Agreement provides that "[e]ach Principal shall be jointly and severally liable for each and every obligation and duty of the Principals set forth herein."[7] The Indemnity Agreement defines "Principal" as:

> [A]ny of the undersigned individuals or entities, as well as any and all affiliates, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of the undersigned or any wholly or partially owned subsidiary, division or affiliate has an interest or participation, whether now existing or which may hereafter be created or acquired; provided, however, and notwithstanding anything to the contrary in this Agreement, none of Parallel Resource Partners, LLC, a Delaware limited liability company ("Parallel"), any of the investment funds advised or managed by Parallel or any of the portfolio companies of the investment funds advised or managed by Parallel, other than the

---

[6] Exhibit A at ¶ 19.

[7] Exhibit A at ¶ 20.

Principals that are signatories hereto, shall be considered a "Principal" for purposes of this Agreement.[8]

15.     White Marlin, by executing the Indemnity Agreement, has a contractual obligation to indemnify and hold harmless USSIC for loss on any bonds issued to White Marlin and all other Principals that executed the Indemnity Agreement.

16.     USSIC, as surety, also issued bonds on behalf of Principals that executed Additional Named Principal Supplements. Signatories to the Additional Named Principal Supplements represented that they were an affiliate of one or more of the Principals signing the Indemnity Agreement, agreed that they were a Principal under the terms of the Indemnity Agreement, and explicitly joined the Indemnity Agreement and assumed all the obligations of a Principal under the Indemnity Agreement. For that reason, White Marlin is also obligated to USSIC for loss on bonds issued to all named Principals that executed the Additional Named Principal Supplements.

17.     The Surety received a demand under one of the bonds (Bond No. B012260) for which White Marlin is obligated to USSIC from Mississippi Power Company.[9]  Bond No. B012260 was executed effective September 6, 2019 and issued to Petro Harvester Operating Company, LLC ("Petro"). Petro executed the Additional Named Principal Supplement on September 6, 2019 which refers to the Indemnity Agreement. After reviewing the claim, the Surety made payment to Mississippi Power Company pursuant to the bond in the amount of $292,374.98.[10]

---

[8] Exhibit A at Introductory Paragraph.

[9] July 19, 2022 Letter, attached as **Exhibit D**.

[10] September 20, 2022 Letter with check, attached as **Exhibit E**.

---

18.     Of the other bonds USSIC issued for White Marlin or other Principals that White

Marline has a contractual obligation to protect USSIC from loss pursuant to the Indemnity

Agreement, the following bonds remain open (collectively, the "**Bonds**"):[11]

| Principal | Bond No. | Penal Sum | Bond Form |
|---|---|---|---|
| WHITE MARLIN OPERATING COMPANY | B005114 | 2,190,000.00 | S-TX-P 5 |
| WHITE MARLIN OPERATING COMPANY | B005115 | 500,000.00 | L-TX-L&P |
| WHITE MARLIN OPERATING COMPANY | B009303 | 1,250,000.00 | S-LA-BLKT PLUGGING |
| WHITE MARLIN PETROLEUM LLC | B009482 | 1,385,213.00 | P-ON-CHEVRON |
| WHITE MARLIN OIL AND GAS COMP | B009483 | 950,000.00 | P-ON-HILCORP |
| WHITE MARLIN OPERATING COMPANY | B009490 | 100,000.00 | L-TX L&P |
| WHITE MARLIN MIDSTREAM LLC | B011583 | 1,750,000.00 | P-ON-ARROWHEAD |
| PETRO HARVESTER OPERATING COMP | B012262 | 1,000,000.00 | P-ON-CHEVRON |
| PETRO HARVESTER OPERATING COMP | B012263 | 1,000,000.00 | P-ON-CHEVRON |
| ROCKALL LA LLC | B012265 | 14,338,000.00 | P-ON-BURLINGTON |
| | | | |
| **Total** | | **24,463,213.00** | |

## C.   INDEMNITOR HAS FAILED AND REFUSED TO INDEMNIFY AND POST COLLATERAL UPON DEMAND

19.     The Surety issued a written demand on the Indemnitor dated September 15, 2022

for past due premiums for bonds issued for White Marlin in the amount of $697,350.86, attorneys'

fees and expenses in the amount of $134,029.83 to protect the rights and interests of the Surety

under the White Marlin bonds and the Indemnity Agreement, and to provide collateral security of

$24,998,213 for the Bonds.[12] Despite written demand, the Indemnitor failed (a) to pay the owed

premiums, (b) to reimburse the Surety for attorney fees and expenses, and (c) to indemnify and

provide the requested collateral as required by the Indemnity Agreement.

---

[11] List of remaining open Bonds, attached as **Exhibit B**.

[12] September 15, 2022 Letter to Indemnitor, attached as **Exhibit C**.

---

20.     The Surety fears that the Indemnitor may deplete assets to a point where there will

not be sufficient collateral to protect the Surety and will leave the Surety exposed under the Bonds

in the amount of $24,463,213.[13] This amount is the face amount of the undischarged and potential

liability of the Surety under the Bonds. Without the collateral to secure the Surety from such loss,

the Surety will suffer irreparable harm under the Bonds with no recourse for reimbursement from

the Indemnitor.

21.     The Surety seeks and is entitled to injunctive relief and specific performance of the

Indemnitor's obligation to post collateral under the Indemnity Agreement.

22.     The Surety requests that this Court issue a preliminary and permanent injunction

compelling the Indemnitor: (a) to post collateral in the amount of $24,463,213, plus additional

funds necessary to secure the expenses, court costs, and attorneys' fees expended and/or will be

expended as necessary in order to enforce the Indemnity Agreement, and (b) to provide immediate

access to their books, records, accounts, databases, and any and all financial records the Surety has

a right to access under the Indemnity Agreements (the "**Records**"). Without injunctive relief, the

Surety will suffer irreparable harm because of the likelihood of the Indemnitor dissipating assets.

The disposition of assets will reduce the amount of collateral available to the Surety and prevent

Indemnitor from being able to fulfill their obligations to provide collateral sufficient to protect the

Surety from all undischarged liability.

---

[13] After the Surety issued its demand on September 15, 2022, two bonds issued on behalf of White Marlin were cancelled that effectively reduced the number of open bonds to the 10 listed in Paragraph 18 with a total penal limit of $24,463,213.

## IV.    CLAIMS FOR RELIEF

**A.    BREACH OF INDEMNITY AGREEMENT**

23.    The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

24.    Indemnitor executed the Indemnity Agreement whereby it agreed to indemnify the Surety against any liability or loss in connection with the Bonds.

25.    Indemnitor has failed to make payment or otherwise indemnify the Surety for its losses under the terms of the Indemnity Agreement, which constitutes a breach of the Indemnity Agreement.

26.    As a direct and proximate result of Indemnitor's breach of the Indemnity Agreement, the Surety has incurred and will continue to incur losses, costs, and expenses, including attorneys' fees and costs associated with the prosecution of this action.

27.    The Surety is entitled to the entry of judgment against Indemnitor in an amount sufficient to fully indemnify and hold the Surety harmless from and against all loss under the terms of the Indemnity Agreement.

**A.    COMMON LAW INDEMNITY**

28.    The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

29.    The Surety has been called upon as surety for Indemnitor's alleged defaults under the Bonds.

30.    Indemnitor benefitted from the Surety's posting of the Bonds, as Indemnitor could not have performed without the Bonds.

---

**PLAINTIFF'S ORIGINAL COMPLAINT FOR
INDEMNITY, EQUITABLE, AND OTHER RELIEF**

31.     Under the theories of common law indemnity, unjust enrichment, and restitution, the Surety is entitled to payment from Indemnitor for all of the Surety's loss and expense resulting from issuance of the Bonds.

### B.     SPECIFIC PERFORMANCE OF COLLATERAL OBLIGATIONS OF INDEMNITOR

32.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

33.     Under Paragraph 3 of the Indemnity Agreement, the Indemnitor is obligated to deposit collateral in a form acceptable to the Surety in an amount sufficient to protect the Surety against exposure from all undischarged liability on the Bonds.

34.     Pursuant to Paragraph 3 of the Indemnity Agreement, the Surety has demanded that the Indemnitor deposit collateral totaling $24,463,213 relative to the face amount of the undischarged liability of the Surety under the Bonds.

35.     Despite the Surety's demand, the Indemnitor has failed and/or refused to deposit any collateral with the Surety. The failure of the Indemnitor to deposit the demanded collateral with the Surety constitutes a breach of the Indemnity Agreement.

36.     If the requested relief is not granted, the Indemnitor may sell, transfer, dispose, lien, secure, or otherwise divert asserts, thereby preventing the Surety's access to those assets for discharging the Indemnitor's obligations to indemnify the Surety.

37.     The Surety is therefore entitled to the entry of a judgment compelling the Indemnitor to specifically perform its duty to deposit collateral with the Surety in the minimum amount of $24,463,213.

---

C.    **SPECIFIC PERFORMANCE OF BOND PREMIUM OBLIGATIONS OF INDEMNITOR**

38.    The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

39.    Pursuant to the Indemnity Agreement, Indemnitor is obligated to pay to the Surety premiums and charges at the rates and times specified by the Surety with respect to each Bond.

40.    Under Paragraph 1 of the Indemnity Agreement, the Indemnitor is obligated to pay to the Surety premiums and charges at the rates and times specified by the Surety with respect to each Bond.

41.    Pursuant to Paragraph 1 of the Indemnity Agreement, the Surety has demanded that the Indemnitor submit payment for past due bond premiums in the amount of $687,350.86.

42.    Despite the Surety's demand, the Indemnitor has failed and/or refused to submit payment of the past due bond premiums to the Surety. The failure of the Indemnitor to submit payment of the past due bond premiums with the Surety constitutes a breach of the Indemnity Agreement.

43.    The Surety is therefore entitled to the entry of a judgment compelling the Indemnitor to specifically perform its duty to pay bond premiums to the Surety in the minimum amount of $687,350.86.

D.    **SPECIFIC PERFORMANCE OF DUTY TO FURNISH BOOKS AND RECORDS**

44.    The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

45.    Under Paragraph 4 of the Indemnity Agreement, the Indemnitor, upon demand, is obligated to furnish the Surety free access to the books and records of the Indemnitor.

46.     The Surety is therefore entitled to entry of a judgment compelling the Indemnitor to specifically perform its obligation to furnish the Surety free access to their books and records.

**E.     EXONERATION**

47.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

48.     The Indemnitor is liable to the Surety under the Indemnity Agreement for all amounts necessary to exonerate the Surety from liability existing and/or asserted against it.

**F.     COLLATERALIZATION/QUIA TIMET**

49.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

50.     The Indemnitor agreed to procure the full and complete discharge of the Surety under the Bonds and/or to provide collateral in an amount of money sufficient to satisfy all undischarged and potential liability under the Bonds and any fees and expenses incurred in order to secure the compliance of the Indemnitor and the enforcement of the Indemnity Agreement.

51.     The Indemnitor has refused to honor or perform its obligations under the Indemnity Agreement to provide collateral sufficient to protect the Surety, despite written demand from the Surety.

52.     The Surety is entitled to receive collateral security sufficient to discharge any and all potential liability on the Bonds and all fees and expenses incurred in securing compliance with the Indemnity Agreement.

**G.     MOTION FOR PRELIMINARY INJUNCTION**

53.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

54.      The Surety hereby moves for a Preliminary Injunction (a) ordering the Indemnitor to deposit immediately cash collateral in the amount of $24,463,213 with the Surety and (b) ordering the Indemnitor to provide the Surety immediate access to its books and records the Surety has a right to access under Paragraph 4 of the Indemnity Agreement (collectively, the "Records"). The injunctive relief is necessary to preserve the status quo and to prevent significant, imminent, and irreparable harm to the Surety, as the Surety will suffer such harm if it does receive the protection it has a right to receive under the Indemnity Agreement in the form of cash collateral.

55.      The Surety will also suffer immediate and irreparable injury if the Indemnitor is not immediately restrained from destroying and/or hiding the Records, and the Indemnitor has a contractual obligation to provide access to the Records.  No harm will occur to the Indemnitor if this Court orders it to abide by its contractual obligation and provide reasonable access to the Surety.

56.      The Surety will likely prevail on the merits and has no adequate remedy at law. Injunctive relief will not adversely affect the public interest, and the Surety is willing to post a bond in the amount the Court deems appropriate.

## V.    CONDITIONS PRECEDENT

57.      All conditions precedent to recovery by the Surety from the Indemnitor have occurred or have been performed.

## VI.    RECOVERY OF ATTORNEYS' FEES

58.      The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

59.      The Indemnity Agreement entitles the Surety to recover its attorneys' fees and costs arising from Indemnitor's breach of the Indemnity Agreement. The acts described in this Petition

forced the Surety to retain legal counsel pursue recovery for damages caused by Indemnitor's acts and/or omissions. Accordingly, the Surety seeks reimbursement for its reasonable and necessary attorneys' fees and costs.

60.     Additionally, and alternatively, the Surety is entitled to recovery of attorneys' fees under Section 38.001 *et. seq.* of the Texas Civil Practice and Remedies Code.

## VII.     INTEREST

61.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

62.     The Surety is also entitled to recover prejudgment interest against Indemnitor at the highest rate allowed by law. Further, if the Surety recovers on this action, it is entitled to post-judgment interest at the highest rate allowed by law, from the date of judgment until such judgment is satisfied.

## VIII.     REQUEST FOR RELIEF

For these reasons, Plaintiff U.S. Specialty Insurance Company respectfully requests that Indemnitor be cited to appear and answer herein; and that the Surety be granted judgment against Indemnitor for the following:

(a)     Judgment against in the Indemnitor for $292,374.98, which is the amount of loss incurred by the Surety under Bond No. B012260;

(b)     Judgment compelling the Indemnitor to specifically perform its obligation to deposit collateral with the Surety in the amount of $24,463,213, which is the amount sufficient to protect the Surety against exposure from all undischarged liability on the Bonds;

(c)     Judgment compelling the Indemnitor to specifically perform its obligation to pay to the Surety Bond Premiums in the amount of $687,350.86, which is the amount of past due Bond Premiums at the time of this filing;

(d)     Judgment compelling the Indemnitor to specifically perform its duty to furnish the Surety free access to its books and records;

---

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**INDEMNITY, EQUITABLE, AND OTHER RELIEF**

(e)    Preliminary injunction and permanent injunction for the following relief: (i) that the Indemnitor be required to specifically perform its obligation to deposit cash collateral with the Surety in the amount of $24,463,213; and (ii) that the Indemnitor provide the Surety with immediate access to the Records;

(f)    Judgment against Indemnitor for the Surety's reasonable attorneys' fees and expenses incurred by the Surety to protect/pursue its rights and interest under White Marlin bonds and the Indemnity Agreement;

(g)    Judgment against Indemnitor for all costs of court;

(h)    Judgment against Indemnitor for prejudgment and post judgment interest at the highest rate allowed by law; and

(i)    For such further relief, both general and specific, as may be deemed appropriate by this Court.


DATED:    December 9, 2022.


Respectfully Submitted,

*/s/ Gregory M. Weinstein*
GREGORY M. WEINSTEIN
State Bar No. 16027020
CHRIS VALENTINE
State Bar No. 24104313
**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
Telephone:    214.865.6126
Facsimile:    214.865.6140
Email:        gweinstein@weinrad.com
              cvalentine@weinrad.com


**ATTORNEYS FOR PLAINTIFF U.S.
SPECIALTY INSURANCE COMPANY**

# EXHIBIT A

(01/31/13) Modified                                                          White Marlin /PIA No. 1083

## PAYMENT AND INDEMNITY AGREEMENT No. 1083

THIS PAYMENT AND INDEMNITY AGREEMENT (as amended and supplemented, this "Agreement") is executed by each of the undersigned on behalf of each Principal (as defined below) for the benefit of U.S. Specialty Insurance Company (the "Surety") in connection with any bond or bonds executed or to be executed on behalf of any Principal and to induce the Surety to execute or procure the execution of such bond(s) and any extensions, modifications, or renewals thereof, additions thereto, or substitutions therefor (the "Bonds"). The term "Principal" as defined and used herein shall mean any of the undersigned individuals or entities, as well as any and all affiliates, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of the undersigned or any wholly or partially owned subsidiary, division or affiliate has an interest or participation, whether now existing or which may hereafter be created or acquired; provided, however, and notwithstanding anything to the contrary in this Agreement, none of Parallel Resource Partners, LLC, a Delaware limited liability company ("Parallel"), any of the investment funds advised or managed by Parallel or any of the portfolio companies of the investment funds advised or managed by Parallel, other than the Principals that are signatories hereto, shall be considered a "Principal" for purposes of this Agreement.

IN CONSIDERATION of the execution or procurement of the Bonds, and for other good and valuable consideration, the receipt and sufficiency of which the Principals hereby acknowledge, the Principals hereby agree, for themselves, their personal representatives, successors, and assigns, jointly and severally, as follows:

1. **Bond Premiums** The Principals shall pay to the Surety premiums and charges at the rates and at the times specified by the Surety with respect to each Bond (as the Surety may specify at any time before or after the issuance of any Bond), continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds, and all matters arising therefrom, and until the Surety receives evidence, satisfactory to the Surety, of such discharge or release. All first year premiums are fully earned immediately upon issuance of each Bond and must be paid in full unless otherwise agreed in writing. If any Principal fails to pay when due any premium or portion thereof, or fails to pay within ten days after demand of any other sum becoming due the Surety hereunder; then, unless the Principals shall, immediately upon demand therefor: (a) deliver to the Surety evidence, satisfactory to the Surety, of the discharge and release of the Surety from any and all liability and responsibility under the Bonds and all matters arising therefrom; and (b) pay to the Surety all sums owed the Surety as of the effective date of such absolute release of the Surety from said obligations, the Surety may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to the Surety, an amount equal to the full penalty amount of the Bonds, to be held as collateral until: (i) all sums due and to become due to the Surety have been paid, and (ii) the Surety shall be wholly discharged and released from all liability under the Bonds.

2. **Indemnification of Surety** The Principals shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur by reason or in consequence of having executed or procured the execution of the Bonds or in enforcing this Agreement against any Principal or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds. If the Surety deems it necessary to make an independent investigation of a claim, demand or suit, the Principals jointly and severally acknowledge and agree that all reasonable expenses attendant to such investigation, whether incurred internally or with third parties, is included as an indemnified expense.

3. **Security** The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond. Immediately upon the Surety's demand therefor, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral. Each Principal hereby grants to the Surety a security interest in all money and other property now or hereafter delivered by such Principal to the Surety, and all income (if any) thereon. If a Principal provides the Surety with a letter of credit or similar instrument, such Principal agrees that the Surety has the right to call on the same from time to time, in whole or in part and for any reason or no reason, and to hold the proceeds thereof as collateral for the obligations of the Principals hereunder. Not in limitation of any other provision of this Agreement and as security for all of the provisions of this Agreement and any other indebtedness or liabilities of any Principal to the Surety, whenever and however incurred and whether originally owing to the Surety or subsequently acquired by the Surety, if the Principals fail to provide any required collateral after demand therefor, then each Principal hereby (a) grants to the Surety a security interest in all of such Principal's accounts, chattel paper, electronic chattel paper, payment intangibles, promissory notes, letter of credit rights, documents, instruments, equipment (including all parts, accessions and additions thereto), general intangibles, goods, inventory, investment property, deposit accounts and all proceeds, products and supporting obligations for and accessions to any of the foregoing, in each case whether then owned or later acquired, and (b) authorizes the Surety to file and continue financing statements naming such Principal as debtor and describing the collateral as "all property," all at the expense of the Principals. Any term used in the preceding sentence and defined in the Uniform Commercial Code shall have the meaning therein ascribed to such term. Any collateral provided at any time by any Principal shall be available, in the discretion of the Surety, as collateral security on any or all Bonds heretofore or hereafter executed for or at the request of such Principal or any other Principal.

4. **Inspection** Until the Surety shall have been furnished with evidence of its full, final and complete discharge without loss from any and all Bonds, the Surety and its agents shall have free access, at any and all reasonable times, to the books and records of each Principal relevant to the obligations under this Agreement. Each individual Principal consents to the Surety's request, receipt and use of, consumer credit reports and investigative consumer credit reports with respect to such Principal. Any bank, credit reporting credit

Page 1 of 5

**16**

IndemCo

(01/31/13) Modified White Marlin /PIA No. 1083

bureau or credit reporting agency, obligee of a Bond or other individual or entity possessing records or having information concerning the financial affairs and operations of any Principal is hereby authorized to furnish to the Surety and its agents any such records or information requested by the Surety. Each Principal will execute any additional document requested by the Surety to cause the release of such records and information.

5. **Additional Sureties** If IndemCo L.P. or the Surety shall procure any other company or companies, including but not limited to American Contractors Indemnity Company and/or SureTec Insurance Company, to execute or join with it in executing, or to reinsure any Bond, this Agreement shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give it or them a direct right of action against the Principals to enforce the provisions hereof.

6. **Evidence of Liability** An itemized statement of payments made by the Surety for any of the purposes specified herein, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Principals to reimburse the Surety for such payments.

7. **Additional Rights of Surety** The Surety, in its sole discretion and without notice to any Principal, is hereby authorized but not required, (a) from time to time to make or consent to any change in the Bonds or to issue any substitutes or any renewal thereof, and this Agreement shall apply to such substituted, changed or renewed Bonds; (b) take such action as it may deem appropriate to prevent or minimize loss under the Bonds, including, but not limited to, taking steps to procure discharge from liability under the Bonds; and (c) to adjust, settle, or compromise any claim or suit arising under the Bonds and, with respect to any such claim or suit, to take any action it may deem appropriate. Any adjustment, settlement, or compromise made or action taken by the Surety shall be conclusive against and binding upon the Principals.

8. **Bond Forms** The Principals acknowledge and agree it is their sole responsibility to provide the proper forms for the Bonds to be executed by the Surety, and neither the Surety nor its agents shall have any liability whatsoever to any Principal if the Principals fail to furnish the Surety with the proper forms. It shall be the sole responsibility of the Principals to review the bond form to be executed by the Surety for any errors or omissions before delivery of any Bond to its obligee, and the Surety and its agents shall have no liability to the Principals on account of any such errors and omissions. Before requesting the Surety issue any Bond, the Principals shall obtain confirmation the proposed obligee on the Bond will accept the Surety as surety on the proposed Bond, and neither the Surety nor its agents shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any Bond. Each Principal agrees the Principals shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any Bond to its obligee. The Surety and its agents shall have no liability to the Principal if the Bond is not timely delivered to any obligee for any reason whatsoever.

9. **Additional Obligations of Principals** Each Principal agrees to pay all amounts owed and/or described herein regardless of (a) the failure of any Principal to sign any application for a Bond; (b) any claim that other indemnity, security, or collateral was to have been obtained; (c) the release, return, or exchange by the Surety with or without the consent of any other Principal, of any indemnity, security, or collateral that may have been obtained, or (d) the fact that any other Principal is not bound for any reason. The Surety is expressly subrogated to all rights, if any (but if a Principal has waived its rights of subrogation against any party, such waiver shall control this Agreement), of the Principals (or any or all of them) to collect, receive, recover, and/or be reimbursed from (i) any co-owners or owners of undivided interest in any properties, wells, and leasehold interests relative to which the Bonds shall apply (collectively, the "**Related Property**"); (ii) any party contractually bound to pay or reimburse any Principal on account of ownership or operation of any Related Property; or (iii) any other party otherwise obligated to, or for, any Principal in any way, in connection with, or arising out of damage to any Related Property. The Surety, as subrogee, upon default of payment of any sums becoming payable hereunder by any Principal, may enforce all of the rights of the Principals in and to any such above-described claims and interests; and may pursue its remedies hereunder in its own name or in the name of the relevant Principal(s); but nothing herein shall require that the Surety pursue any such remedy or claim against any third party. Each Principal agrees, upon demand of the Surety therefor, to execute and deliver any and all appropriate further documentation evidencing and authorizing the Surety to pursue, recover, collect, and hold for its account any such claims or rights.

10. **Suits to Enforce** Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Principals; and any suit or suits upon one or more causes of action, or against one or more of the Principals, shall not prejudice or bar subsequent suits against any other Principals on the same or any other causes of action, whether theretofore or thereafter accruing.

11. **Liability Limitation** Each Principal agrees the Surety's liability, if any, to any one or more of the Principals on account of any acts or omissions by the Surety (whether such acts or omissions arise in tort, breach of contract, or at law) arising out of or related to any Bonds or any other conduct by the Surety, **WHETHER THE SAME ARISES FROM THE NEGLIGENCE OF THE SURETY OR OTHERWISE,** shall be and is hereby expressly limited to an amount equal to the premium actually paid to the Surety for such Bond.

12. **Waiver of Notice** Each Principal hereby expressly waives notice from the Surety of any claim or demand made against the Surety or any Principal under the Bonds or of any information the Surety may receive concerning any Principal, any Bond, or any contract.

13. **No Obligation to Issue Bonds** The Surety shall have the right to decline to issue any or all Bonds applied for hereunder and shall have the right to withdraw from or cancel any application for a Bond at any time, all without incurring any liability to any Principal. The use of the plural term "Bonds" herein shall not be interpreted to require that the Surety issue multiple bonds or any bond whatsoever.

**17**
IndemCo

(01/31/13) Modified

White Marlin /PIA No. 1083

14. **Conflict and Modification**   If any portion of this Agreement is in conflict with any law controlling the construction hereof, such portion of this instrument shall be considered to be deleted and the remainder shall continue in full force and effect.

15. **Waivers**   To the maximum extent not prohibited by applicable law, each Principal hereby waives all rights to claim any of its property is exempt from levy, execution, sale, or other legal process in any action hereunder.

16. **Continuing Obligation**   This Agreement is a continuing obligation of each Principal, and no Principal shall have the right to terminate its obligations for any Bonds issued during the term hereof.  A Principal may terminate this Agreement as to future Bonds by notice to the Surety, but such termination as to a Principal shall in no way affect the obligation of any other Principal who has not given such notice.  In order to terminate liability as to future Bonds, a Principal must notify the Surety of such termination and state in such notice the effective date (not less than 30 days after receipt thereof by the Surety) of termination of such Principal's liability for future Bonds.  After the effective date of such termination, the Principal giving notice of termination shall nonetheless be liable hereunder for Bonds executed or authorized before such date and renewal, substitutions, and extensions thereof.

17. **Place of Performance and Enforcement**   All obligations hereunder of each Principal is performable in, and all monies due the Surety hereunder are payable in, Harris County, Texas.  This Agreement shall be construed and enforced in accordance with the laws of the state of Texas, without regard to its conflict of law rules.  **EACH PRINCIPAL HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE VENUE AND JURISDICTION OF THE FEDERAL AND STATE COURTS SITTING IN HARRIS COUNTY, TEXAS, AND DOES FURTHER WAIVE ANY AND ALL RIGHTS TO OBJECT TO SUCH VENUE OR JURISDICTION.**

18. **Rights Not Exclusive**   Nothing herein contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed.

19. **Other Bonds and Agreements**   This Agreement shall also extend to and cover and indemnify the Surety against loss under any presently outstanding Bonds, and the obligation of the Principals hereunder, with respect to such pre-existing Bonds, shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of any or all of the Principals under any presently existing agreement relating to or securing such pre-existing Bonds.  Further, with respect to any future Bonds, the obligation of any or all of the Principals under any such presently existing agreement(s) shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of the Principals hereunder.

20. **Joint and Several Liability**   Each Principal shall be deemed to have made all of the representations, warranties, covenants, and agreements set forth herein, and each Principal shall be jointly and severally liable for each and every obligation and duty of the Principals set forth herein.  A default of any Principal in the performance of any of its obligations to the Surety under this or any other agreement shall constitute a default hereunder by all Principals.  Each Principal understands and agrees that the circumstances, financial or otherwise, of any one or more of the other Principals may change substantially over the term of this Agreement, and the Principals therefore agree to keep themselves fully informed as to the business activities and financial affairs of each Principal and of the risks being engaged in, so that each is always aware of the risks of hazards in continuing to act as a Principal.  Each Principal expressly waives any requirement for notice from the Surety of any fact or information coming to the notice or knowledge of the Surety affecting its rights or the rights or liabilities of the Principals.  If any claim or demand is made by the Surety against the Principals, or any one or more of them, by reason of the execution of a Bond, the Surety is expressly authorized to settle or compromise with any one or more of the Principals individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others and each Principal expressly waives the right to be discharged by reason of the release of one or more of the joint debtors, and hereby consents to any settlement or composition that may hereafter be made.  The liability of the Principals hereunder shall not be affected by the failure of the Principals, or any one or more of them, to sign any Bond or this Agreement, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

21. **Required Notices**   The Principals agree to notify the Surety (a) in the event of any change, alteration, restructuring, cancellation, transfer (including, without limitation, the conveyance of a security interest), or other modification to (i) the working interest ownership of the property for which a Bond is issued, or (ii) any lease for or relating to the property for which a Bond is issued, or (b) upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Surety may be subsequently charged under any Bond.

22. **Manner of Notices**   All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefor or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed (a) in the case of a Principal, to such Principal's address set forth below and (b) in the case of the Surety, to (i) the Surety at 13403 Northwest Freeway, Houston, Texas 77040-6094, Attention: President, and (ii) IndemCo L.P. at 777 Post Oak Boulevard, Houston, Texas 77056.  Such names and addresses may be changed by written notice given as provided in this Agreement.  Actual notice, however given, shall always be effective.

23. **Interest**   Any and all sums not paid when due shall bear interest at the lesser of (a) ten percent (10%) per annum, or (b) the maximum non-usurious rate of interest allowed by applicable law.

24. **Entire Agreement and Amendments**   This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein and may be amended or terminated only by a document executed by all parties, or their

**18**
IndemCo

(01/31/13) Modified                                                                                                    White Marlin /PIA No. 1083

respective successors or assigns. There are no restrictions, promises, warranties, covenants, or undertakings other than those expressly set forth herein.

25. **Headings**   The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

26. **Attorney's Fees**   In the event any action is instituted to enforce any of the provisions of this Agreement or to recover damages for the breach of any provision hereof, the prevailing party therein shall be entitled to recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees.

27. **Number and Gender**   Whenever required by the context, any reference herein to the singular shall include the plural, any reference to the plural shall include the singular, and the gender of any pronoun shall mean and include the appropriate gender, whether masculine, feminine, or neuter.

28. **Counterparts**   This Agreement may be executed in multiple counterparts, and by the Principals on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

29. **Continuing Agreement**   Each Principal understands and agrees (a) this Agreement is a continuing agreement to indemnify over an indefinite period; (b) Bonds may vary widely in amounts and nature, and (c) each Principal will be bound by all Bonds, and any increases in the penal limits of all Bonds.   Each Principal shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of any Principal, accepted or released other agreements of indemnity or collateral from some or all of the Principals or others in connection with the procurement of Bonds, it being expressly understood and agreed by each Principal that any and all other rights which the Surety may have or acquire against such Principal or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

30. **No Conflict**   Each Principal represents and warrants that neither this Agreement nor any condition relating to the issuance of any Bond shall be a breach or default in any other obligation of such Principal, specifically including, without limitation, any loan agreement.

31. ***ENTIRE AGREEMENT***   **EACH PRINCIPAL REPRESENTS TO THE SURETY THAT SUCH PRINCIPAL HAS CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE EFFECTIVE DATE OF THIS AGREEMENT SHALL BE THE DATE SET FORTH BELOW, REGARDLESS OF THE DATE OR DATES ON WHICH ANY PRINCIPAL MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE SURETY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE PRINCIPALS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.**

32. Individual Certification.   Each individual signing below on behalf of any Principal certifies that (a) such individual is familiar with the organizational documents and other records of such Principal; (b) the name of such Principal as reflected below is its correct name; (c) such Principal exists and is in good standing in the jurisdiction of its organization; (d) the execution, delivery and performance of this Agreement by such Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions, and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; (e) the form of signature block for such Principal is an appropriate signature block for it; (f) such individual holds the position reflected below and is duly authorized to execute this Agreement on behalf of such Principal, and (g) this Agreement has been duly executed and delivered on behalf of such Principal.

EXECUTED effective as of _____July 21st_____, 20_15_.

*EXECUTION ON FOLLOWING PAGE(S)*

**19** IndemCo

(01/31/13) Modified

For entity as Principal:

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO.

White Marlin Energy Partners, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on ___ July 21, 2015

by ___ Terrell J. Clark ___ President & CEO
(Name of officer)          (Title of officer)

of White Marlin Energy Partners, LLC
(Name of Principal)

PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016        Notary Signature
Printed Name
Notary in and for the State of
My commission expires May 4/20 16

---

For entity as Principal:

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO.

White Marlin Operating Company, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on ___ July 21, 2015

by ___ Terrell J. Clark ___ Pres & CEO
(Name of officer)          (Title of officer)

of White Marlin Operating Company, LLC
(Name of Principal)

behalf of such entity.

NOTARIAL STAMP OR SEAL
PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016        Signature
Printed Name Paul M. Dunning
Notary in and for the State of Texas
My commission expires May 4/20 16

---

For entity as Principal:

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO.:

White Marlin Oil and Gas Company, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on ___ July 21, 2015

by ___ Terrell J. Clark ___ President & CEO
(Name of officer)          (Title of officer)

of White Marlin Oil and Gas Company, LLC
(Name of Principal)

behalf of such entity.

NOTARIAL STAMP OR SEAL
PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016        Notary Signature
Printed Name Paul M. Dunning
Notary in and for the State of Texas

---

For entity as Principal:

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO.

White Marlin Exploration Company, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on ___ July 21, 2015

by ___ Terrell J. Clark ___ President & CEO
(Name of officer)          (Title of officer)

of White Marlin Exploration Company, LLC
(Name of Principal)

behalf of such entity.

NOTARIAL STAMP OR SEAL
PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016        Notary Signature
Printed Name Paul M. Dunning
Notary in and for the State of Texas

20
IndemCo

# EXHIBIT B

| Principal | Group | Producer | Bond No. | Penalty | Collateral | Start Date | Exp Date | Surety | Bond Form |
|---|---|---|---|---|---|---|---|---|---|
| WHITE MARLIN OPERATING CO | ROCKALL | LOCKTON (HOU) | B005114 | 2,190,000.00 | | 02/01/22 | 02/01/23 | USSIC | S-TX-P-5 |
| WHITE MARLIN OPERATING CO | ROCKALL | LOCKTON (HOU) | B005115 | 500,000.00 | | 08/17/22 | 08/17/23 | USSIC | L-TX-L&P |
| WHITE MARLIN OPERATING CO | ROCKALL | LOCKTON (HOU) | B009303 | 1,250,000.00 | | 03/19/22 | 03/19/23 | USSIC | S-LA-BLKT PLUGGING |
| WHITE MARLIN PETROLEUM LL | ROCKALL | LOCKTON (HOU) | B009482 | 1,385,213.00 | | 07/24/22 | 07/24/23 | USSIC | P-ON-CHEVRON |
| WHITE MARLIN OIL AND GAS C | ROCKALL | LOCKTON (HOU) | B009483 | 950,000.00 | | 07/24/22 | 07/24/23 | USSIC | P-ON-HILCORP |
| WHITE MARLIN OPERATING CO | ROCKALL | LOCKTON (HOU) | B009490 | 100,000.00 | | 07/24/22 | 07/24/23 | USSIC | L-TX-L&P |
| WHITE MARLIN MIDSTREAM LL | ROCKALL | LOCKTON (HOU) | B011583 | 1,750,000.00 | | 08/01/22 | 08/01/23 | USSIC | P-ON-ARROWHEAD |
| PETRO HARVESTER OPERATIN | ROCKALL | LOCKTON (HOU) | B012262 | 1,000,000.00 | | 09/06/22 | 09/06/23 | USSIC | P-ON-CHEVRON |
| PETRO HARVESTER OPERATIN | ROCKALL | LOCKTON (HOU) | B012263 | 1,000,000.00 | | 09/06/22 | 09/06/23 | USSIC | P-ON-CHEVRON |
| ROCKALL LA LLC | ROCKALL | LOCKTON (HOU) | B012265 | 14,338,000.00 | | 09/06/22 | 09/06/23 | USSIC | P-ON-BURLINGTON |
| | | | 10 | 24,463,213.00 | 0 | | | | |
| | | | 11 | 48,926,426.00 | | | | | |

# EXHIBIT C

 **TOKIO MARINE
HCC**

Surety Group
801 S. Figueroa Street Suite 700
Los Angeles, CA 90017 USA
Tel: 310-649-0990

September 15, 2022                 *VIA EMAIL, REGULAR & CERTIFIED MAIL*
                                  *nes@talcopetro.com*


Nigel E. Solida
White Marlin Operating Company, LLC
Talco Petroleum, LLC
1415 Louisiana Street, Suite 3550
Houston, TX 77002


**Re:     Principal:         White Marlin Operating Company, LLC**


**Request for Collateral as Security, Payment of Outstanding Bond Premium and
Reimbursement of Fees and Expenses**


Dear Mr. Solida:

Pursuant to the November 8, 2019 Membership Interest Purchase Agreement ("Purchase
Agreement"), Talco Petroleum, LLC ("Talco") purchased from Rockall Energy, LLC
("Rockall") the "Petroleum Membership Interest" in White Marline Petroleum, LLC and
the "Operating Membership Interest" in White Marlin Operating Company, LLC ("White
Marlin"). The enclosed July 21, 2015 Payment and Indemnity Agreement ("Indemnity
Agreement") was executed by White Marlin as Principal. As a result of the Purchase
Agreement, Talco assumed all liabilities and obligations of White Marlin under the
Indemnity Agreement.

USSIC issued various bonds in reliance on the Indemnity Agreement. Currently, there are
$24,998,213.00 of outstanding surety bonds issued on behalf of or at the request of White
Marlin. For those bonds, USSIC is owed earned, unpaid premium in the amount of
$687,450.86. Additionally, as a result of Rockall's March 9, 2022 bankruptcy filing in the
Northern District of Texas, USSIC has incurred $134,029.83 in attorneys' fees and
expenses to date.

**24**

Paragraph 1 of the Indemnity Agreement titled Bond Premium provides:

"The Principals shall pay the Surety premiums and charges at the rates and at the times specified by the Surety with respect to each Bond...continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds, and all matters arising therefrom, and until the Surety receives evidence, satisfactory to the Surety, of such discharge or release."

Paragraph 2 of the Indemnity Agreement titled Indemnification of Surety provides:

"The Principals shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur by reason or in consequence of having executed or procured the execution of the Bonds or in enforcing this Agreement against any Principal or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds."

Paragraph 3 of the Indemnity Agreement titled Security provides:

"The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in a form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the Principal's obligations to the Surety hereunder ... to cover any actual or potential liability, claim, suit, or judgment under any Bond. Immediately upon the Surety's demand therefor, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral."

By way of this letter and in accordance with the terms of the Indemnity Agreement:

1. USSIC respectfully requests that White Marlin as Principal and indemnitor reimburse USSIC for attorneys' fees and expenses incurred to date in the amount of $134,029.83. Please contact the undersigned regarding same;

2. USSIC further requests that White Marlin submit payment to IndemCo for past due bond premium in the amount of $687,350.86; and

3. USSIC further requests that White Marlin make arrangements with USSIC through IndemCo to provide USSIC with collateral security in the total amount of $24,998,213.00. Please contact Meredith Anderson, Underwriter, at manderson@indemco.com, (832) 649-5024 to discuss this request.

**25**

USSIC reserves all its rights and defenses under the Bonds, the Indemnity Agreement, the law or otherwise.

Very Truly Yours,

*M. Joseph Rosas, Esq.*

M. Joseph Rosas, Senior Bond Claims Attorney
On behalf of U.S. Specialty Insurance Company
Direct Dial: (310) 957-3048
E-mail: JRosas@tmhcc.com

Enclosure –    July 21, 2015 Payment and Indemnity Agreement No. 1083

cc:    IndemCo        *via email*

(01/31/13) Modified                                                                                      White Marlin /PIA No. 1083

# PAYMENT AND INDEMNITY AGREEMENT No. 1083

THIS PAYMENT AND INDEMNITY AGREEMENT (as amended and supplemented, this "Agreement") is executed by each of the undersigned on behalf of each Principal (as defined below) for the benefit of U.S. Specialty Insurance Company (the "Surety") in connection with any bond or bonds executed or to be executed on behalf of any Principal and to induce the Surety to execute or procure the execution of such bond(s) and any extensions, modifications, or renewals thereof, additions thereto, or substitutions therefor (the "Bonds"). The term "Principal" as defined and used herein shall mean any of the undersigned individuals or entities, as well as any and all affiliates, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of the undersigned or any wholly or partially owned subsidiary, division or affiliate has an interest or participation, whether now existing or which may hereafter be created or acquired; provided, however, and notwithstanding anything to the contrary in this Agreement, none of Parallel Resource Partners, LLC, a Delaware limited liability company ("Parallel"), any of the investment funds advised or managed by Parallel or any of the portfolio companies of the investment funds advised or managed by Parallel, other than the Principals that are signatories hereto, shall be considered a "Principal" for purposes of this Agreement.

IN CONSIDERATION of the execution or procurement of the Bonds, and for other good and valuable consideration, the receipt and sufficiency of which the Principals hereby acknowledge, the Principals hereby agree, for themselves, their personal representatives, successors, and assigns, jointly and severally, as follows:

1.   **Bond Premiums**   The Principals shall pay to the Surety premiums and charges at the rates and at the times specified by the Surety with respect to each Bond (as the Surety may specify at any time before or after the issuance of any Bond), continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds, and all matters arising therefrom, and until the Surety receives evidence, satisfactory to the Surety, of such discharge or release. All first year premiums are fully earned immediately upon issuance of each Bond and must be paid in full unless otherwise agreed in writing. If any Principal fails to pay when due any premium or portion thereof, or fails to pay within ten days after demand of any other sum becoming due the Surety hereunder; then, unless the Principals shall, immediately upon demand therefor: (a) deliver to the Surety evidence, satisfactory to the Surety, of the discharge and release of the Surety from any and all liability and responsibility under the Bonds and all matters arising therefrom; and (b) pay to the Surety all sums owed the Surety as of the effective date of such absolute release of the Surety from said obligations, the Surety may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to the Surety, an amount equal to the full penalty amount of the Bonds, to be held as collateral until: (i) all sums due and to become due to the Surety have been paid, and (ii) the Surety shall be wholly discharged and released from all liability under the Bonds.

2.   **Indemnification of Surety**   The Principals shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur by reason or in consequence of having executed or procured the execution of the Bonds or in enforcing this Agreement against any Principal or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds. If the Surety deems it necessary to make an independent investigation of a claim, demand or suit, the Principals jointly and severally acknowledge and agree that all reasonable expenses attendant to such investigation, whether incurred internally or with third parties, is included as an indemnified expense.

3.   **Security**   The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond. Immediately upon the Surety's demand therefor, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral. Each Principal hereby grants to the Surety a security interest in all money and other property now or hereafter delivered by such Principal to the Surety, and all income (if any) thereon. If a Principal provides the Surety with a letter of credit or similar instrument, such Principal agrees that the Surety has the right to call on the same from time to time, in whole or in part and for any reason or no reason, and to hold the proceeds thereof as collateral for the obligations of the Principals hereunder. Not in limitation of any other provision of this Agreement and as security for all of the provisions of this Agreement and any other indebtedness or liabilities of any Principal to the Surety, whenever and however incurred and whether originally owing to the Surety or subsequently acquired by the Surety, if the Principals fail to provide any required collateral after demand therefor, then each Principal hereby (a) grants to the Surety a security interest in all of such Principal's accounts, chattel paper, electronic chattel paper, payment intangibles, promissory notes, letter of credit rights, documents, instruments, equipment (including all parts, accessions and additions thereto), general intangibles, goods, inventory, investment property, deposit accounts and all proceeds, products and supporting obligations for and accessions to any of the foregoing, in each case whether then owned or later acquired, and (b) authorizes the Surety to file and continue financing statements naming such Principal as debtor and describing the collateral as "all property," all at the expense of the Principals. Any term used in the preceding sentence and defined in the Uniform Commercial Code shall have the meaning therein ascribed to such term. Any collateral provided at any time by any Principal shall be available, in the discretion of the Surety, as collateral security on any or all Bonds heretofore or hereafter executed for or at the request of such Principal or any other Principal.

4.   **Inspection**   Until the Surety shall have been furnished with evidence of its full, final and complete discharge without loss from any and all Bonds, the Surety and its agents shall have free access, at any and all reasonable times, to the books and records of each Principal relevant to the obligations under this Agreement. Each individual Principal consents to the Surety's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to such Principal. Any bank, creditor, credit

IndemCo
27

(01/31/13) Modified

White Marlin /PIA No. 1083

bureau or credit reporting agency, obligee of a Bond or other individual or entity possessing records or having information concerning the financial affairs and operations of any Principal is hereby authorized to furnish to the Surety and its agents any such records or information requested by the Surety. Each Principal will execute any additional document requested by the Surety to cause the release of such records and information.

5. **Additional Sureties** If IndemCo L.P. or the Surety shall procure any other company or companies, including but not limited to American Contractors Indemnity Company and/or SureTec Insurance Company, to execute or join with it in executing, or to reinsure any Bond, this Agreement shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give it or them a direct right of action against the Principals to enforce the provisions hereof.

6. **Evidence of Liability** An itemized statement of payments made by the Surety for any of the purposes specified herein, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Principals to reimburse the Surety for such payments.

7. **Additional Rights of Surety** The Surety, in its sole discretion and without notice to any Principal, is hereby authorized but not required, (a) from time to time to make or consent to any change in the Bonds or to issue any substitutes or any renewal thereof, and this Agreement shall apply to such substituted, changed or renewed Bonds; (b) take such action as it may deem appropriate to prevent or minimize loss under the Bonds, including, but not limited to, taking steps to procure discharge from liability under the Bonds; and (c) to adjust, settle, or compromise any claim or suit arising under the Bonds and, with respect to any such claim or suit, to take any action it may deem appropriate. Any adjustment, settlement, or compromise made or action taken by the Surety shall be conclusive against and binding upon the Principals.

8. **Bond Forms** The Principals acknowledge and agree it is their sole responsibility to provide the proper forms for the Bonds to be executed by the Surety, and neither the Surety nor its agents shall have any liability whatsoever to any Principal if the Principals fail to furnish the Surety with the proper forms. It shall be the sole responsibility of the Principals to review the bond form to be executed by the Surety for any errors or omissions before delivery of any Bond to its obligee, and the Surety and its agents shall have no liability to the Principals on account of any such errors and omissions. Before requesting the Surety issue any Bond, the Principals shall obtain confirmation the proposed obligee on the Bond will accept the Surety as surety on the proposed Bond, and neither the Surety nor its agents shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any Bond. Each Principal agrees the Principals shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any Bond to its obligee. The Surety and its agents shall have no liability to the Principal if the Bond is not timely delivered to any obligee for any reason whatsoever.

9. **Additional Obligations of Principals** Each Principal agrees to pay all amounts owed and/or described herein regardless of (a) the failure of any Principal to sign any application for a Bond; (b) any claim that other indemnity, security, or collateral was to have been obtained; (c) the release, return, or exchange by the Surety with or without the consent of any other Principal, of any indemnity, security, or collateral that may have been obtained; or (d) the fact that any other Principal is not bound for any reason. The Surety is expressly subrogated to all rights, if any (but if a Principal has waived its rights of subrogation against any party, such waiver shall control this Agreement), of the Principals (or any or all of them) to collect, receive, recover, and/or be reimbursed from (i) any co-owners or owners of undivided interest in any properties, wells, and leasehold interests relative to which the Bonds shall apply (collectively, the "Related Property"); (ii) any party contractually bound to pay or reimburse any Principal on account of ownership or operation of any Related Property; or (iii) any other party otherwise obligated to, or for, any Principal in any way, in connection with, or arising out of damage to any Related Property. The Surety, as subrogee, upon default of payment of any sums becoming payable hereunder by any Principal, may enforce all of the rights of the Principals in and to any such above-described claims and interests; and may pursue its remedies hereunder in its own name or in the name of the relevant Principal(s); but nothing herein shall require that the Surety pursue any such remedy or claim against any third party. Each Principal agrees, upon demand of the Surety therefor, to execute and deliver any and all appropriate further documentation evidencing and authorizing the Surety to pursue, recover, collect, and hold for its account any such claims or rights.

10. **Suits to Enforce** Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Principals; and any suit or suits upon one or more causes of action, or against one or more of the Principals, shall not prejudice or bar subsequent suits against any other Principals on the same or any other causes of action, whether theretofore or thereafter accruing.

11. **Liability Limitation** Each Principal agrees the Surety's liability, if any, to any one or more of the Principals on account of any acts or omissions by the Surety (whether such acts or omissions arise in tort, breach of contract, or at law) arising out of or related to any Bonds or any other conduct by the Surety, **WHETHER THE SAME ARISES FROM THE NEGLIGENCE OF THE SURETY OR OTHERWISE,** shall be and is hereby expressly limited to an amount equal to the premium actually paid to the Surety for such Bond.

12. **Waiver of Notice** Each Principal hereby expressly waives notice from the Surety of any claim or demand made against the Surety or any Principal under the Bonds or of any information the Surety may receive concerning any Principal, any Bond, or any contract.

13. **No Obligation to Issue Bonds** The Surety shall have the right to decline to issue any or all Bonds applied for hereunder and shall have the right to withdraw from or cancel any application for a Bond at any time, all without incurring any liability to any Principal. The use of the plural term "Bonds" herein shall not be interpreted to require that the Surety issue multiple bonds or any bond whatsoever.

IndemCo

(01/31/13) Modified                                                                                   White Marlin /PIA No. 1083

14. **Conflict and Modification** If any portion of this Agreement is in conflict with any law controlling the construction hereof, such portion of this instrument shall be considered to be deleted and the remainder shall continue in full force and effect.

15. **Waivers** To the maximum extent not prohibited by applicable law, each Principal hereby waives all rights to claim any of its property is exempt from levy, execution, sale, or other legal process in any action hereunder.

16. **Continuing Obligation** This Agreement is a continuing obligation of each Principal, and no Principal shall have the right to terminate its obligations for any Bonds issued during the term hereof. A Principal may terminate this Agreement as to future Bonds by notice to the Surety, but such termination as to a Principal shall in no way affect the obligation of any other Principal who has not given such notice. In order to terminate liability as to future Bonds, a Principal must notify the Surety of such termination and state in such notice the effective date (not less than 30 days after receipt thereof by the Surety) of termination of such Principal's liability for future Bonds. After the effective date of such termination, the Principal giving notice of termination shall nonetheless be liable hereunder for Bonds executed or authorized before such date and renewal, substitutions, and extensions thereof.

17. **Place of Performance and Enforcement** All obligations hereunder of each Principal is performable in, and all monies due the Surety hereunder are payable in, Harris County, Texas. This Agreement shall be construed and enforced in accordance with the laws of the state of Texas, without regard to its conflict of law rules. **EACH PRINCIPAL HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE VENUE AND JURISDICTION OF THE FEDERAL AND STATE COURTS SITTING IN HARRIS COUNTY, TEXAS, AND DOES FURTHER WAIVE ANY AND ALL RIGHTS TO OBJECT TO SUCH VENUE OR JURISDICTION.**

18. **Rights Not Exclusive** Nothing herein-contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed.

19. **Other Bonds and Agreements** This Agreement shall also extend to and cover and indemnify the Surety against loss under any presently outstanding Bonds, and the obligation of the Principals hereunder, with respect to such pre-existing Bonds, shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of any or all of the Principals under any presently existing agreement relating to or securing such pre-existing Bonds. Further, with respect to any future Bonds, the obligation of any or all of the Principals under any such presently existing agreement(s) shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of the Principals hereunder.

20. **Joint and Several Liability** Each Principal shall be deemed to have made all of the representations, warranties, covenants, and agreements set forth herein, and each Principal shall be jointly and severally liable for each and every obligation and duty of the Principals set forth herein. A default of any Principal in the performance of any of its obligations to the Surety under this or any other agreement shall constitute a default hereunder by all Principals. Each Principal understands and agrees that the circumstances, financial or otherwise, of any one or more of the other Principals may change substantially over the term of this Agreement, and the Principals therefore agree to keep themselves fully informed as to the business activities and financial affairs of each Principal and of the risks being engaged in, so that each is always aware of the risks of hazards in continuing to act as a Principal. Each Principal expressly waives any requirement for notice from the Surety of any fact or information coming to the notice or knowledge of the Surety affecting its rights or the rights or liabilities of the Principals. If any claim or demand is made by the Surety against the Principals, or any one or more of them, by reason of the execution of a Bond, the Surety is expressly authorized to settle or compromise with any one or more of the Principals individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others and each Principal expressly waives the right to be discharged by reason of the release of one or more of the joint debtors, and hereby consents to any settlement or composition that may hereafter be made. The liability of the Principals hereunder shall not be affected by the failure of the Principals, or any one or more of them, to sign any Bond or this Agreement, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

21. **Required Notices** The Principals agree to notify the Surety (a) in the event of any change, alteration, restructuring, cancellation, transfer (including, without limitation, the conveyance of a security interest), or other modification to (i) the working interest ownership of the property for which a Bond is issued, or (ii) any lease for or relating to the property for which a Bond is issued, or (b) upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Surety may be subsequently charged under any Bond.

22. **Manner of Notices** All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefor or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed (a) in the case of a Principal, to such Principal's address set forth below and (b) in the case of the Surety, to (i) the Surety at 13403 Northwest Freeway, Houston, Texas 77040-6094, Attention: President, and (ii) IndemCo L.P. at 777 Post Oak Boulevard, Houston, Texas 77056. Such names and addresses may be changed by written notice given as provided in this Agreement. Actual notice, however given, shall always be effective.

23. **Interest** Any and all sums not paid when due shall bear interest at the lesser of (a) ten percent (10%) per annum, or (b) the maximum non-usurious rate of interest allowed by applicable law.

24. **Entire Agreement and Amendments** This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein and may be amended or terminated only by a document executed by all parties, or their

IndemCo

(01/31/13) Modified
White Marlin /PIA No. 1083

respective successors or assigns. There are no restrictions, promises, warranties, covenants, or undertakings other than those expressly set forth herein.

25. **Headings** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

26. **Attorney's Fees** In the event any action is instituted to enforce any of the provisions of this Agreement or to recover damages for the breach of any provision hereof, the prevailing party therein shall be entitled to recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees.

27. **Number and Gender** Whenever required by the context, any reference herein to the singular shall include the plural, any reference to the plural shall include the singular, and the gender of any pronoun shall mean and include the appropriate gender, whether masculine, feminine, or neuter.

28. **Counterparts** This Agreement may be executed in multiple counterparts, and by the Principals on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

29. **Continuing Agreement** Each Principal understands and agrees (a) this Agreement is a continuing agreement to indemnify over an indefinite period; (b) Bonds may vary widely in amounts and nature, and (c) each Principal will be bound by all Bonds, and any increases in the penal limits of all Bonds. Each Principal shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of any Principal, accepted or released other agreements of indemnity or collateral from some or all of the Principals or others in connection with the procurement of Bonds, it being expressly understood and agreed by each Principal that any and all other rights which the Surety may have or acquire against such Principal or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

30. **No Conflict** Each Principal represents and warrants that neither this Agreement nor any condition relating to the issuance of any Bond shall be a breach or default in any other obligation of such Principal, specifically including, without limitation, any loan agreement.

31. *ENTIRE AGREEMENT* EACH PRINCIPAL REPRESENTS TO THE SURETY THAT SUCH PRINCIPAL HAS CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE EFFECTIVE DATE OF THIS AGREEMENT SHALL BE THE DATE SET FORTH BELOW, REGARDLESS OF THE DATE OR DATES ON WHICH ANY PRINCIPAL MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE SURETY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE PRINCIPALS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.

32. Individual Certification. Each individual signing below on behalf of any Principal certifies that (a) such individual is familiar with the organizational documents and other records of such Principal; (b) the name of such Principal as reflected below is its correct name; (c) such Principal exists and is in good standing in the jurisdiction of its organization; (d) the execution, delivery and performance of this Agreement by such Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions, and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; (e) the form of signature block for such Principal is an appropriate signature block for it; (f) such individual holds the position reflected below and is duly authorized to execute this Agreement on behalf of such Principal, and (g) this Agreement has been duly executed and delivered on behalf of such Principal.

EXECUTED effective as of _____July 21st_____, 20 15 .

*EXECUTION ON FOLLOWING PAGE(S)*

IronmCo

(01/31/13) Modified

White Marlin /PIA No. 1083

**For entity as Principal:**

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO. █████████

White Marlin Energy Partners, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on July 21, 2015

by Terrell J. Clark   President & CEO
(Name of officer)   (Title of officer)

of White Marlin Energy Partners, LLC
(Name of Principal)

behalf of such entity.

PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016

Notary Signature
Printed Name Paul M. Dunning
Notary in and for the State of Texas
My commission expires May 4, 2016

**For entity as Principal:**

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO. █████████

White Marlin Operating Company, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on July 21, 2015

by Terrell J. Clark   Pres & CEO
(Name of officer)   (Title of officer)

of White Marlin Operating Company, LLC
(Name of Principal)

behalf of such entity.

NOTARIAL STAMP OR SEAL

PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016

Notary Signature
Printed Name Paul M. Dunning
Notary in and for the State of Texas
My commission expires May 4, 2016

**For entity as Principal:**

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO. █████████

White Marlin Oil and Gas Company, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on July 21, 2015

by Terrell J. Clark   President & CEO
(Name of officer)   (Title of officer)

of White Marlin Oil and Gas Company, LLC
(Name of Principal)

behalf of such entity.

NOTARIAL STAMP OR SEAL

PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016

Notary Signature
Printed Name Paul M. Dunning
Notary in and for the State of Texas

**For entity as Principal:**

TYPE OF ENTITY: Limited Liability Company

TAXPAYER IDENTIFICATION NO. █████████

White Marlin Exploration Company, LLC
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Terrell J. Clark

TITLE: President & CEO

ADDRESS: 15990 N. Barkers Landing Rd., Suite 350

Houston, Texas 77079

This instrument was acknowledged before me on July 21, 2015

by Terrell J. Clark   President & CEO
(Name of officer)   (Title of officer)

of White Marlin Exploration Company, LLC
(Name of Principal)

behalf of such entity.

NOTARIAL STAMP OR SEAL

PAUL M. DUNNING
Notary Public, State of Texas
My Commission Expires
May 04, 2016

Notary Signature
Printed Name Paul M. Dunning
Notary in and for the State of Texas

IngeoimCo

34



PS Form **3811** Facsimile, July 2015                    Domestic Return Receipt



Return Receipt Card MUST Have **Return To:** Address Prior To Sealing Envelope

CERTIFIED MAIL

USPS CERTIFIED MAIL

**RETURN RECEIPT REQUESTED**

**Nigel E. Solida**
**White Marlin Operating Company LLC**
**Talco Petroleum LLC**
**1415 Louisiana Street, Suite 3550**
**Houston, TX 77002**

**32**

# EXHIBIT D

Mississippi Power

July 19, 2022

US Specialty Insurance Company
13403 Northwest Freeway
Houston TX 77040

**RE: SURETY BOND NUMBER: B012260**

To Whom it May Concern:

A bond was held by Mississippi Power Company covering all accounts in the name of the principal Petro Harvester Operating Company LLC. These accounts were covered by said bond at the time they closed. Enclosed is a statement of account listing each and its final balance.

As of today, we are requesting payment in the amount of $292,374.98 be paid to Mississippi Power Company in compliance with the terms of the security. Payment may be mailed to 16080 Jim Bank Rd, Gulfport MS 39503.

If further information is needed, please do not hesitate to contact us at 1-800-532-1502 or email forms@mississippipower.com if it is more convenient. Thank you for your prompt attention to this matter.

Sincerely,

Mississippi Power
Billing Services

Enclosed

Received

JUL 25 2022

TMHCC - Claims
**34**

Mississippi Power

## STATEMENT OF ACCOUNT

Petro Harvester Operating Company LLC
5005 L B J FWY STE 700
DALLAS TX  75244

| Account No | Address | | Final Balance |
|---|---|---|---|
| 05686-99007 | 1119 W 6TH ST, 2500 KVA WEST PAD LAUREL MS 39440 | $ | 60,319.33 |
| 07772-06041 | 729 CONOCO LN, SWD 7 & 11 QUITMAN MS 39355 | $ | 1,735.36 |
| 08612-06028 | 729 CONOCO LN, SHED QUITMAN MS 39355 | $ | 39.69 |
| 09242-06011 | 729 CONOCO LN, WELL 4 QUITMAN MS 39355 | $ | 43.94 |
| 09841-80029 | 1633 WAYNESBORO SHUBUTA RD, JULIUS WEST 18-13#1 WAYNESBORO MS 39367 | $ | 54.43 |
| 10051-80022 | 1631 WAYNESBORO SHUBUTA RD, JULIUS WEST #1 ET AL WAYNESBORO MS 39367 | $ | 59.97 |
| 14041-80026 | 1623 WAYNESBORO SHUBUTA RD, J A WEST #1 WAYNESBORO MS 39367 | $ | 98.71 |
| 14251-80017 | 1629 WAYNESBORO SHUBUTA RD, JULIUS WEST 18-12#1 WAYNESBORO MS 39367 | $ | 61.08 |
| 15301-80012 | 1575 WAYNESBORO SHUBUTA RD, GEORGIA PACIFIC #1 WAYNESBORO MS 39367 | $ | 60.93 |
| 18451-80011 | 813 WALLER RIDGE RD, J T WEST 18-5 #1 WAYNESBORO MS 39367 | $ | 1,262.71 |
| 18633-75045 | 2000 HIGHWAY 84 W, ROTO FLEX MOTOR LOAD LAUREL MS 39440 | $ | 36,653.16 |
| 21039-77182 | 1119 W 6TH ST, 800 HP MTR NORTH PAD LAUREL MS 39440 | $ | 26,305.85 |
| 22036-41269 | 1012 SANDERSVILLE HEIDELBERG RD, OIL EXTRACTION WELL 39477 | $ | 6,298.60 |
| 22341-66077 | 1107 W 6TH ST LAUREL MS 39440 | $ | 347.80 |
| 22761-67083 | 1119 W 6TH ST, NORTH  PAD LAUREL MS 39440 | $ | 17,670.81 |
| 31082-00016 | 91170 HIGHWAY 42 W RICHTON MS 39476 | $ | 1,179.15 |
| 31712-00055 | 91148 HIGHWAY 42 RICHTON MS 39476 | $ | 654.32 |
| 32731-79073 | 1804 JEFFERSON ST LAUREL MS 39440 | $ | 10,836.41 |
| 33571-79075 | 1806 JEFFERSON ST LAUREL MS 39440 | $ | 19,437.82 |
| 38571-79075 | 400 S 15TH AVE LAUREL MS 39440 | $ | 2,383.18 |
| 48721-80075 | 2480 MOOSE DR LAUREL MS 39440 | $ | 45.84 |
| 58141-79073 | 2000 HIGHWAY 84 W LAUREL MS 39440 | $ | 25,175.96 |
| 58561-79073 | 2000 HIGHWAY 84 W, * LAUREL MS 39440 | $ | 12,944.22 |
| 58981-79064 | 2000 HIGHWAY 84 W LAUREL MS 39440 | $ | 143.89 |
| 61239-08034 | 2415 MOOSE DR, NEW LAUREL MS 39440 | $ | 3,002.54 |
| 61831-67013 | 2 MTPLEASANTBAPTISTCHURCH RD SANDERSVILLE MS 39477 | $ | 263.18 |
| 64651-80078 | 2303 HIGHWAY 84 W LAUREL MS 39440 | $ | 34,895.36 |
| 88081-66072 | 401 N 12TH AVE, MAIN PAD HUDSONS SAL LAUREL MS 39440 | $ | 102.24 |
| 88291-66072 | 402 N 12TH AVE, MAIN PAD HUDSONS SAL LAUREL MS 39440 | $ | 30,298.50 |
| TOTAL | | $ | 292,374.98 |

**35**



Mississippi Power

Post Office Box 4079
Gulfport, Mississippi 39502-4079

21 JUL 2022 PM

Northwest Freeway
Houston TX 77040

Received

JUL 25 2022

TMHCC - Claims

RE: SURETY BOND NUMBER: B012260

77040$6006

# EXHIBIT E



**TOKIO MARINE HCC**

Surety Group
801 S. Figueroa Street Suite 700
Los Angeles, CA 90017 USA
Tel: 310-649-0990

September 20, 2022

*VIA EMAIL & CERTIFIED MAIL*
*forms@mississippipower.com*

Mississippi Power Company
Billing Services
16080 Jim Bank Rd.
Gulfport, MS 39503

| Re: | Principal | : | **Petro Harvester Operating Company, LLC** |
|-----|-----------|---|---------------------------------------------|
| | **Obligee** | : | **Mississippi Power Company** |
| | **Bond No.** | : | **B012260 – Indemnity Bond for Electrical Service** |
| | **Bond Amount** | : | **$485,000.00** |

Attention Billing Services:

U.S. Specialty Insurance Company ("USSIC") is in receipt of your July 19, 2022 demand on bond B012260. Attached please find check number 0000286994 in the amount of $292,374.98, payable to "Mississippi Power Company" and tendered as full and final settlement of any and all claims against the bond.

We reserve all rights and defenses under the bond, the law or otherwise.

Very truly yours,

*M. Joseph Rosas, Esq.*

M. Joseph Rosas, Senior Bond Claims Attorney
On behalf of U.S. Specialty Insurance Company
Direct Dial: (310) 957-3048
Email: JRosas@tmhcc.com

Enclosure: Check Number 0000286994

**38**

Claims Disbursement Account
Check No: 0000286994    Check Amount: $292,374.98

Vendor ID/Vendor Name: 1180153772/ MISSISSIPPI POWER COMPANY

Check Date: 9/20/2022

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| IND-B012260 | B012260 | | 9/19/2022 | 292,374.98 | ANY AND ALL CLAIMS, FULL AND FINAL SETTLEMENT ROCKALL ENERGY, INC. BOND NO. B012260 |

MISSISSIPPI POWER COMPANY
16080 JIM BANK ROAD GULFPORT, MS 39503

**Stub Total**    $292,374.98

---

**U.S. SPECIALTY INSURANCE CO** Member of HCC Surety Group
*Claims Disbursement Account*
Check No: 0000286994     **Check Amount: $292,374.98**     **Check Date:** 9/20/2022
Vendor ID/Vendor Name: 1180153772/ MISSISSIPPI POWER COMPANY

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| IND-B012260 | B012260 | | 9/19/2022 | 292,374.98 | ANY AND ALL CLAIMS, FULL AND FINAL SETTLEMENT ROCKALL ENERGY, INC. BOND NO. B012260 |

**Stub Total**    $292,374.98

---

HCC SERVICE COMPANY, INC. - CHECK IS VOID WITHOUT MICROPRINT ON CHECK BORDER, A TRUE WATERMARK ON BACK, AND THERMOCHROMIC INK.


TOKIO MARINE HCC

**U.S. SPECIALTY INSURANCE CO**
Member of HCC Surety Group
*Claims Disbursement Account*
801 SOUTH FIGUEROA STREET SUITE 700
LOS ANGELES, CA 90017

**WELLS FARGO BANK, NA**

Check No **0000286994**

56-382/412

Void After 180 Days

**Date**    9/20/2022

**Amount**    ***$292,374.98

PAY    ****TWO HUNDRED NINETY-TWO THOUSAND THREE HUNDRED SEVENTY-FOUR AND 98/100 DOLLARS****

TO THE ORDER OF

**MISSISSIPPI POWER COMPANY**
16080 JIM BANK ROAD
GULFPORT, MS 39503

Thomas E. West
Authorized Signature

**39**

⑆0000286994⑆ ⑈041203824⑈ 9671451137⑈

TOKIO MARINE HCC - SURETY GROUP
801 SOUTH FIGUEROA STREET
STE 700
LOS ANGELES, CA 90017

**USPS CERTIFIED MAIL**

9214 7904 3910 0109 3424 06

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: (☐Addressee or ☐Agent)

X

B. Received by: (Please Print Clearly)

C. Date of Delivery

D. Addressee's Address (If Different From Address Used by Sender.)

Secondary Address / Suite / Apt. / Floor (Please Print Clearly)

Delivery Address

City                State    ZIP + 4 Code

Article Addressed To:

Mississippi Power Company
Billing Services
16080 Jim Bank Rd.
Gulfport, MS 39503

9290 9904 3910 0109 3424 00

**40**

JS 44   (Rev. 04/21)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

U.S. Specialty Insurance Company

**DEFENDANTS**

White Marlin Operating Company LLC

**(b)** County of Residence of First Listed Plaintiff   Texas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Kansas
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Weinstein Radcliff Pipkin LLP, 8350 N. Central Expressway, Ste. 1550, Dallas, TX 75206 214-865-6126

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                         *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**       **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane       ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product            Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability       ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &            Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander            Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'            Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability       ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine            Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product            Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability       **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle       ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle       ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| ☒ 190 Other Contract | Product Liability       ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal            Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury       ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury -            Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**       **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights       **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting       ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment       ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/            Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations       ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -       ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment       **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -       ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other       ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education       ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of Indemnity Agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
24,463,213.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
December 9, 2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**41**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.